El Pueblo de Puerto Rico, demandante y apelado, *v.* Almedo Méndez (*a*) Cocuyo, acusado y apelante. El Mismo *v.* El Mismo.

Núms. 7117 y 7118.—*Sometidos:* Noviembre 8, 1938. *Resueltos:* Diciembre 22, 1938.

*Felipe Colón Díaz,* abogado del apelante; *R. A. Gómez, Fiscal,* y *Luis Janer, Fiscal Auxiliar,* abogados de El Pueblo, apelado.

El Juez Asociado Señor Wolf emitió la opinión del tribunal.

Almedo Méndez (*a*) Cocuyo, fué sometido a juicio a virtud de una acusación en que se le imputaba el delito de atentado a la vida. El jurado le declaró culpable de acometimiento y agresión grave y de la sentencia así dictada se interpuso el presente recurso de apelación.

Según se alegó en la acusación los hechos imputados fueron:

". . . Porque el referido acusado, Almedo Méndez (*a*) Cocuyo, allá en o por el día 7 de noviembre de 1935 y en la ciudad de Yauco, . . . voluntaria e ilegalmente, con malicia, premeditación y deliberación y con la intención de causarle muerte ilegal, atacó con un revólver, arma mortífera, al ser humano Angel Fraticelli, haciéndole varios disparos con dicha arma e hiriéndolo en distintas partes del cuerpo. . . ."

El apelante señala cuatro errores. El primero de éstos ataca el haberse admitido dos declaraciones juradas por el juez de la corte inferior. De la transcripción de evidencia, que es nuestra fuente de información auténtica, se desprende que el primer testigo de cargo, Bautista Galarza, luego de declarar que había visto al acusado disparar contra Fraticelli en la noche en cuestión, mostró marcada ten-

dencia a contradecirse haciendo las siguientes manifestaciones:

"Fiscal: ¿Usted vió o no vió el arma?

"R.—El revólver yo no lo ví.

"P.—¿Entre este acusado y Fraticelli ocurrió algo allí en esos momentos, alguna discusión, alguna pelea, o no hubo nada?

"R.—De eso yo no . . .; eso yo no lo ví, allí había un millón de borrachos.

"P. No, hombre, si ocurrió algo entre ellos cuando los disparos. . . .

"R.—Yo no sé. Yó solamente oí los disparos ésos. Es más, a nosotros nos llevaron a la Corte y el Jefe de la Policía nos amenazó a todos los testigos a declarar allí."

El fiscal entonces sentó las bases para impugnar su propio testigo preguntándole si no había declarado lo contrario ante el juez municipal. Luego del testigo haber identificado su propia declaración jurada, que le fué mostrada, el fiscal la presentó como prueba para impugnar su credibilidad.

Un incidente más o menos similar ocurrió durante el examen de otro testigo de cargo llamado José Arocho. En ambas ocasiones la declaración preliminar fué ofrecida y admitida tan sólo con el fin de impugnar al testigo. El apelante sostiene que la corte admitió los documentos como prueba positiva de cargo. Esta aseveración no está sostenida por la prueba. Por el contrario, de los autos y de las instrucciones se desprende que el juez las admitió expresamente tan sólo para la impugnación del testigo. No hallamos que se cometiera error.

En sus instrucciones al jurado el juez hizo un resumen sucinto de lo que cada testigo había dicho. En el segundo señalamiento el apelante sostiene que la corte relató equivocadamente la declaración de Bautista Galarza o sea, el primer testigo de cargo, y que al así hacerlo perjudicó el caso del acusado. En adición al hecho de que este testigo se contradijo abiertamente y de que el tribunal instruyó al jurado que su testimonio debía ponerse en duda, la relación

equivocada, a nuestro juicio, carecía de importancia, y fué puramente técnica. El juez dejó de incluir en su resumen la primera parte de la declaración del testigo, que había sido así:

"'Fiscal: Contésteme la pregunta: ¿Quién hizo allí disparos de revólver?

"Testigo: Yo sentí dos o tres disparos de revólver.

"Fiscal: ¿Pero quién hizo esos disparos? Ésa es la pregunta mía.

"Allí los comentarios de la gente decían . . .

"Juez: Los comentarios no, lo que usted vió. Si usted no vió, pues no vió.

"Allí estaba parado Almedo Méndez.

"Fiscal: ¿Quién hizo los disparos de revólver allí? Es mi pregunta.

"'. . . . .

"¿Usted no oyó la pregunta mía?

"Pues allí estábamos. . . .

"La pregunta mía es quién hizo disparos de revólver, señor, quién disparó allí un arma, si alguien disparó.

"Pues el señor Almedo Méndez.

"¿El acusado?

"Sí, señor."

De lo que antecede puede verse que el testigo no había contestado la pregunta del fiscal. Su primera respuesta positiva fué aquélla a que la corte se refirió en sus instrucciones. No vemos que se cometiera error.

 En el siguiente señalamiento se sostiene que el acusado no tuvo un juicio imparcial. La base para esta conclusión es que al impugnarse la declaración de Galarza por el fiscal, la corte, a moción de éste, y luego de haberse retirado el jurado, ordenó se arrestara al testigo por el delito de perjurio en corte abierta, de conformidad con la ley de marzo 9, 1911 (pág. 136). La corte continuó diciendo que castigaría a cualquier testigo que cometiera perjurio en su presencia y condenó en términos generales la práctica de prestar falso testimonio.

La objeción exacta es que el resto de los testigos habían sido llevados a una habitación contigua cuya pared tan sólo tenía de 8 a 10 pies de alto, al momento en que la corte hizo las anteriores manifestaciones, y que algunos de ellos se ratificaron en sus declaraciones originales por temor a ser castigados. El acusado trató de establecer el hecho de que las declaraciones prestadas ante el juez municipal habían sido obtenidas mediante coacción y no habían sido voluntarias. Las declaraciones de los testigos utilizados para este fin son tan flojas que no podemos ver cómo un jurado pudo haberles dado crédito. Galarza dijo que el jefe de la policía les amenazó a todos y les dijo que "aquí tienen que declarar la verdad de cualquier manera, si no, los vamos a meter a la cárcel porque ustedes son unos bandidos." Otro dijo que el jefe estaba con mucho coraje y tenía un fuete en la mano, y que por temor declaró en la forma en que lo hizo. Otro testigo manifestó que el jefe les dijo que declararan la verdad, e incidentalmente informó a la corte que el acusado y el jefe estaban de malas. Caía dentro de las atribuciones del jurado creer o no a cualquier grupo de testigos. No puede criticarse a la corte por las observaciones que hizo respecto al delito de perjurio, aún asumiendo que los testigos la oyeran. No podemos ver que se cometiera error alguno.

El último error señalado alega que el veredicto es contrario a la prueba y a derecho. Hemos leído la transcripción y hallamos que este error carece de mérito. Es innecesario discutir el señalamiento en su totalidad.

El apelante también fué acusado y convicto del delito de portar armas prohibidas. En apelación no se ha radicado un alegato separado, por lo que estamos obligados a decidir el caso conjuntamente con el más grave que ya hemos considerado, especialmente por haberse sometido el presente por la misma prueba.

*Ambas sentencias deben ser confirmadas.*

El Juez Presidente Sr. Del Toro no intervino.